SIGNED THIS: July 28, 2021

_____
**Thomas L. Perkins
United States Chief Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE: | ) |
| | ) |
| INTERNATIONAL SUPPLY CO., | ) Case No. 15-81467 |
| | ) |
| Debtor. | ) |
| | ) |
| SHELDON STONE, as Creditor Trustee of the International Supply Co. Creditor Trust, | ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Adv. No. 17-8051 |
| | ) |
| MORTON COMMUNITY BANK and REBECCA HOFMAN, | ) ) |
| | ) |
| Defendants. | ) |

**OPINION**

This matter is before the Court on a motion for summary judgment filed by one of the Defendants, Morton Community Bank (MCB). The Plaintiff, Sheldon Stone, is the Trustee of the International Supply Company Creditor Trust, having been appointed as Trustee by this Court as part of the Chapter 11 Plan of Liquidation filed by the Debtor, International Supply Company

(ISCO), and confirmed on May 26, 2016. Under the terms of the confirmed plan, the Trustee was granted authority to exercise the avoiding powers under Chapter 5 of the Bankruptcy Code.

The Complaint filed by the Trustee on September 22, 2017 names as Defendants MCB, E. Lee Hofmann (individually, "Lee") and Rebecca Hofmann (individually, Rebecca). The Hofmanns, husband and wife, at all relevant times were officers, controlling shareholders and paid employees of ISCO, a closely held corporation. The first three counts of the eleven-Count Complaint seek avoidance of loan payments totaling $180,617.65 made by ISCO to MCB within two years before bankruptcy, alleging that the payments benefitted Lee, personally, and not ISCO, and that the absence of reasonably equivalent value makes the transfers avoidable as constructively fraudulent. The statutory bases for avoidance include Section 548(a)(1)(B) of the Bankruptcy Code and two sections of the Uniform Fraudulent Transfer Act as adopted in Illinois, 740 ILCS §§160/5(a)(2) and 160/6, actionable via Section 544 of the Bankruptcy Code. Counts IV, V and VI, seeking avoidance of two obligations owed to MCB evidenced by promissory notes executed by ISCO as maker, are also brought on theories of constructive fraud under the same three statutory provisions.

Lee, named as a Defendant in Counts I, II, III, VIII, IX and X, filed a personal Chapter 7 case in 2019 and was dismissed as a Defendant in this Adversary Proceeding by Order entered December 20, 2019. Rebecca has not sought bankruptcy relief.

## FINDINGS OF FACT

Prior to 2010, Lee was involved with a business and commercial real estate development in Peoria known as InPlay that ultimately failed, causing him to incur substantial personal liability, separately, to both MCB and to CEFCU, a Peoria-based credit union. In January 2011, he entered into a settlement agreement to resolve his liability to MCB under which he paid MCB a cash payment of $415,000 and agreed to pay an additional $800,000 over seven years, signing a promissory note on January 5, 2011 in that amount. ISCO was not obligated on the note.

In 2011, CEFCU obtained two judgments against Lee totaling in excess of $3.0 million. To collect on the judgments, CEFCU garnished the salary he was earning as President of ISCO. In an effort to avoid the garnishment, a portion of Lee's compensation was surreptitiously diverted and recharacterized as wages earned by and paid to Rebecca. CEFCU eventually became aware of the scheme, brought suit and obtained a judgment entered January 11, 2013 against Rebecca and ISCO in the amount of $261,800, determined to be the amount that CEFCU

2

would have received had Lee's earnings been correctly reported and garnished. ISCO appealed the judgment and posted a Certificate of Deposit in the amount of $330,000 with the Peoria County Circuit Clerk to stay enforcement of the judgment during the appeal process.

In June 2013, the Hofmanns and ISCO entered into a settlement agreement with CEFCU to resolve their liability on the three judgments. Under the agreement, Lee was to pay CEFCU $2,010,000 by August 1, 2013, in exchange for which CEFCU would release the three judgments and the related appeals would be dismissed. Under the terms of the settlement, neither ISCO nor Rebecca was required to separately pay CEFCU any amount. After Lee failed to make payment by the August 1 deadline, the agreement was amended to increase the settlement amount to $2,020,000 with $1,400,000 due on August 2, 2013 and the balance of $620,000 due on August 15, 2013. The $1,400,000 payment was timely made on August 2, 2013 with funds loaned by Heartland Bank to ISCO and Lee. An additional $320,000 was paid to CEFCU on August 15, 2013, also with funds loaned by Heartland Bank to ISCO and Lee. The remaining $300,000 was paid on August 16, 2013, which is the crux of the dispute.

The final $300,000 needed to complete the CEFCU settlement was obtained with a loan from MCB evidenced by a promissory note in that amount, dated August 16, 2013, with a maturity date of February 16, 2014, executed by ISCO and Lee as co-borrowers. The note was secured by a security interest in all of ISCO's personal property assets. Prior to this loan, ISCO had not been indebted to MCB. Lee had continued to make payments on his January 2011 note, executed in settlement of the InPlay indebtedness, until March 2012. The $300,000 loan proceeds were disbursed by a check from MCB payable to CEFCU.

According to CEFCU's attorney, who testified in a deposition, the $261,800 judgment CEFCU had obtained against ISCO and Rebecca was subject to increase for interest, attorney fees and court costs. The attorney testified that unpaid attorney fees were incurred by CEFCU in the amount of $81,947.50. As part of the settlement CEFCU agreed to release that judgment including its claim for additional interest, attorney fees and costs. The attorney testified that a cashier's check in the amount of $300,000 was personally delivered to her at her law office on August 16, 2013 by Lee and a representative of MCB, but she was not aware at that time that the source of the funds was a loan from MCB to ISCO. Upon receipt of the cashier's check, CEFCU's attorney delivered to the Hofmanns' and ISCO's attorney the executed release called

3

for by the settlement agreement that released, among other things, CEFCU's claims under the January 11, 2013 judgment against ISCO.

According to the deposition testimony of Robert Dittmer, MCB's executive vice president and chief lending officer, as a condition of making the $300,000 loan, MCB required the accrued interest due on Lee's $800,000 note be paid current. On August 13, 2013, ISCO paid $47,741.08 by corporate check to MCB, which funds were credited to the interest due on Lee's $800,000 note, which had previously been charged off by MCB and removed as a performing loan from MCB's general ledger. When the $300,000 note dated August 16, 2013 was added to MCB's general ledger as a new loan, the January 2011 note was not restored to the general ledger and retained its charged off status.[1]

MCB generates a quarterly Watch List memo for each loan that is graded substandard, for the purpose of regularly updating MCB's loan review group as to the status of such loans and to set loss reserves if warranted. The record contains eight Watch List memos that identify "Lee Hofmann/International Supply Co." as the customer, covering the period from September 11, 2013 through June 4, 2015. The September 11, 2013 memo lists the $300,000 loan and the $800,000 loan (with a remaining balance of $750,000) and references the fact that the $800,000 note was charged off and is "no longer on the books." It also notes that "Lee also paid $47M in accrued interest on our charged-off note, which is being held in a suspense account at this time as we do not want to take a recovery while loaning additional funds."

The December 11, 2013 Watch List memo states that a potential sale of ISCO fell through and the company is "off the market." With respect to the $300,000 note, the memo states that full principal and interest is due at maturity on 2/16/2014.

The March 14, 2014 Watch List memo notes that the matured $300,000 note and the charged off $800,000 note (current balance $712,699 plus attorney fees) will be restructured and combined into one new note on an eight-year amortization with a balloon after 24 months. It further states the expectation that ISCO would make the monthly payments. Mr. Dittmer testified that the restructuring was done at Lee's request. A promissory note dated March 26, 2014 in the

---

[1] Charging off a debt means that a bank no longer carries the account balance as an asset on its books as it considers payment unlikely even though still legally collectible. *Butnick v. Experian Information Solutions, Inc.,* 2021 WL 395808, *4 (E.D.N.Y.). If a charged off debt is moved to a reserve account on a bank's books, subsequent payments will be posted as "Loan Loss Reserve Recovery." *Hussey v. Commissioner of Internal Revenue,* 156 T.C. No. 12 (2021).

4

amount of $1,025,392 payable to MCB was executed by ISCO and Lee as co-makers and was secured by a security interest in all of ISCO's personal property assets. The note called for twenty-three monthly payments of $13,018.87 beginning April 28, 2014 with a final payment of $819,631.87 due on March 28, 2016. Lee arranged for the payments to MCB to be automatically deducted from ISCO's bank account at Heartland Bank. ISCO made thirteen full monthly payments through April 2015. In May, June and July 2015, ISCO made three additional partial payments of less than $4,000 each. ISCO's payments on the March 26, 2014 note total $180,617.65. Lee made no payments himself.

The June 10, 2014 Watch List memo, the first one after the March 26, 2014 note, continued to reflect the separate status of the two loans on MCB's books, showing a current obligation balance of $282,176.51 and a previous charge-off balance of $725,974. Mr. Dittmer, who holds a master's degree in accounting and is a CPA, testified that ISCO's payments were still being accounted for on MCB's books as a credit against the same debt evidenced by the $300,000 note of August 16, 2013, on which ISCO was a co-maker. He testified it is a standard industry practice when new funds are advanced to a borrower who has an earlier charged off loan, to credit payments to the newer loan first, even if a new amortization payment based on a consolidation of the two debts has been agreed to. Mr. Dittmer testified that this accounting practice is driven by a bank regulatory accounting rule that prohibits booking a recovery on a debt that is charged off, and thus no longer on the bank's books as an asset, while the borrower has another unpaid loan that is still on the books. He testified that only if and when the $300,000 note balance was paid in full, would subsequent payments on the March 26, 2014 note have been credited to and recorded as a "recovery" against the charged off $800,000 note.

The June 4, 2015 Watch List memo shows that the $300,000 loan had been paid down to $183,814.91. Mr. Dittmer confirmed that all of payments made by ISCO between April 2014 and July 2015 were credited to the $300,000 loan balance. ISCO filed its voluntary petition under Chapter 11 on September 24, 2015.

## POSITION STATEMENTS

MCB contends that the $300,000 obligation ISCO incurred to MCB on August 16, 2013 is not avoidable as a fraudulently incurred obligation as ISCO received reasonably equivalent value. MCB argues that value is established by the undisputed facts in the record that show that the loan proceeds were paid to CEFCU in satisfaction and release of a judgment held by CEFCU

5

against ISCO in the amount of $261,800 plus interest, fees and costs. MCB further contends that the subsequent payments it made to MCB on that same obligation are also unavoidable as having been made for reasonably equivalent value in the form of reduction in its liability to MCB.

The Trustee contends that CEFCU's judgment against ISCO arose from CEFCU's attempts to collect earlier judgments against Lee and his decision to cause ISCO to pay his salary to his wife. These actions accorded a benefit to Rebecca of $261,800 but ISCO received no benefit. Under these circumstances, argues the Trustee, the judgment should not be treated as valid and the Court should not legitimize Lee's improper tactics that caused ISCO to become liable for a portion of his debt to CEFCU. The Trustee asks the Court to determine that ISCO owed no "legitimate" antecedent debt to CEFCU. If ISCO was not legitimately indebted to CEFCU, it could not have received reasonably equivalent value. The Trustee also contends the fact that only Lee, and not ISCO, was obligated to pay CEFCU under the settlement agreement, supports a finding of no value.

## CONCLUSIONS OF LAW

Summary Judgment Standards

Under Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings in bankruptcy by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548 (1986). If the movant bears the burden of proof at trial, the movant may obtain summary judgment only by proving each element of its claim or defense. *Id.* Where the non-movant bears the ultimate burden of persuasion on a particular issue, however, the requirements that Rule 56 imposes on the moving party are less stringent. In that event, the movant need only show that there is an absence of evidence to support the non-moving party's case. *Id.* at 325. This standard typically applies to a motion for summary judgment brought by a defendant.

Once the moving party's initial burden is met, the nonmoving party must go beyond the pleadings and designate specific facts in the evidentiary record that support each element of the cause of action sufficient to create a genuine issue for trial. *Id.* at 322-23. If the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in his favor on a material question, then the court must enter summary judgment against it. *Waldridge*

*v. Am. Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir. 1994). Factual issues are genuine only if there is sufficient evidence for a reasonable trier of fact to return a verdict in favor of the non-moving party on the evidence presented, and they are material only if their resolution might change the outcome. *Dollard v. Whisenand,* 946 F.3d 342, 353 (7th Cir. 2019). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348 (1986).

On summary judgment, inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Id.* at 587. Courts are not required to draw every conceivable inference from the record but only reasonable ones. *Hannemann v. Southern Door County School Dist.,* 673 F.3d 746, 751 (7th Cir. 2012). Whether an inference is reasonable must be considered in light of the competing inferences to the contrary. *Matsushita Elec.,* 475 U.S. at 588. It is the Trustee's burden to prove by a preponderance of the evidence that there was a fraudulent transfer and that avoidance and recovery is warranted. *Mottaz v. Oswald (In re Frierdich),* 294 F.3d 864, 867 (7th Cir. 2002).

Fraudulent Transfer Avoidance Standards

Counts I through VI of the Complaint each plead a cause of action for avoidance on a theory of constructive fraud under one of three statutes: section 548(a)(1)(B) of the Bankruptcy Code and sections 5(a)(2) and 6(a) of the Uniform Fraudulent Transfer Act, 740 ILCS 160/1 et. seq., made available to the Trustee by section 544(b)(1) of the Bankruptcy Code. The federal and state statutes provide for avoidance of both fraudulent transfers of property by a debtor as well as obligations fraudulently incurred by a debtor. Those statutes also expressly define "value" to include the satisfaction of an antecedent debt of the debtor. 11 U.S.C. §548(d)(2)(A); 740 ILCS 160/4(a). A transfer is "in exchange for" value if one is the *quid pro quo* of the other. *In re Kendall,* 440 B.R. 526, 532 (8th Cir. BAP 2010); *In re Brobeck, Phleger & Harrison LLP,* 408 B.R. 318, 341 (Bankr. N.D. Cal. 2009). Courts often characterize the inquiry into "reasonably equivalent value" as a two-step process, recognizing that whether a debtor received any value at all from a particular transaction, either directly or indirectly, is a separate issue from whether the value of what was received by the debtor is reasonably equivalent to the value of the liability incurred or property transferred. See *In re Phillips,* 379 B.R. 765, 779 (Bankr, N.D. Ill. 2007).

7

The trustee bears the burden of proof for causes of action brought under §548 and §544, including proving that the debtor received less than reasonably equivalent value in exchange for the transfer made or obligation incurred. *In re Mack Industries, Ltd.,* 622 B.R. 887, 892 (Bankr. N.D. Ill. 2020). The focus of the inquiry regarding whether reasonably equivalent value was received by the debtor in exchange for the transfer made or obligation incurred, is on the specific transaction sought to be avoided, the "*quid pro quo* exchange between the debtor and the transferee, rather than an analysis of the transaction's overall value to a debtor as it relates to the welfare of the debtor's business." *Mack Industries,* 622 B.R. at 893 (citing *Balaber-Strauss v. Sixty-Five Brokers,* 256 B.R. 664, 678 (Bankr. S.D.N.Y. 2000)). The misconduct or bad faith of a debtor's management is extraneous to the constructive fraud inquiry. *In re First Commercial Mgmt. Group, Inc.,* 279 B.R. 230, 239 (Bankr. N.D. Ill. 2002).

Analysis

Avoiding an obligation incurred by a debtor is distinct from avoiding payments made on the obligation. *In re NM Holdings Co., LLC,* 407 B.R. 232, 267 (Bankr. E.D. Mich. 2009). Examples of potentially avoidable obligations include a guaranty of another person's debt given by an insolvent debtor, or obligations that were fictitious from the outset or for which a stated consideration was never intended to be provided. See Collier on Bankruptcy (16th Ed.), ¶548.03[4][a]. A debtor's obligation on a guaranty may be avoidable as constructively fraudulent unless it can be shown that the debtor received a direct economic benefit for providing the guaranty or a "fairly concrete" indirect benefit. *In re Image Worldwide, Ltd.,* 139 F.3d 574, 578 (7th Cir. 1998).

Avoidance of an obligation incurred by a debtor does not, by itself, result in a recovery of money or property for the estate. Section 550 imposes such liability only upon a transferee of an avoided transfer. Avoidance of an obligation may benefit unsecured creditors by eliminating a claim that would otherwise dilute the distribution made to that class. Avoidance of an obligation may also benefit the estate by making transfers made by the debtor to the creditor of the avoided obligation, avoidable and recoverable from the creditor. *In re HDD Rotary Sales, LLC,* 512 B.R. 877, 885 (Bankr. S.D. Tex. 2014).

By pursuing avoidance of the obligations incurred by ISCO to MCB evidenced by the August 2013 Note and the March 2014 Note, the Trustee is acting in accordance with the well-established principle that payments by a debtor to its own creditor are, by statutory definition, for

value and, therefore, not avoidable as constructively fraudulent unless the predicate obligation is itself avoided as fraudulently incurred. See *In re Central Illinois Energy Cooperative,* 2016 WL 299007, *4 (C.D. Ill.); *In re Tanglewood Farms, Inc. of Elizabeth City,* 487 B.R. 705, 712-13 (Bankr. E.D.N.C. 2013); *In re Incentium, LLC,* 473 B.R. 264 (Bankr. E.D. Tenn. 2012); *In re TSIC, Inc.,* 428 B.R. 103 (Bankr. D. Del. 2010); *In re All-Type Printing, Inc.,* 274 B.R. 316 (Bankr. D. Conn. 2002). Transfers made in satisfaction of unavoidable obligations are *per se* made for reasonably equivalent value. *In re Tribune Company Fraudulent Conveyance Litigation,* 2018 WL 6329139, *17 (S.D.N.Y.).

At issue in this matter is the avoidability of the obligations incurred by ISCO to MCB under the August 2013 Note and under the March 2014 Note. Also at issue is the avoidability of ISCO's loan payments made to MCB from April 2014 through July 2015 in the total amount of $180,617.65. The Trustee is not attempting to avoid, as a preference or fraudulent transfer, the $300,000 payment made to CEFCU with the proceeds from the August 16, 2013 loan from MCB.

From the limited evidentiary record before the Court on MCB's motion, it cannot be determined whether the parties intended that ISCO would sign the MCB notes as an accommodation maker, 810 ILCS 5/3-419, or whether Lee, but not ISCO, was intended to be the borrower who would acquire a property interest in the loan proceeds.[2] These are fact intensive questions. See *Aurora Firefighter's Credit Union v. Harvey,* 163 Ill.App.3d 915, 920, 516 N.E.2d 1028 (2 Dist. 1987). In general, the picture painted by the Trustee is that Lee, in effect, was using ISCO as a guarantor to help obtain take-out financing to settle his personal debts with CEFCU. Since avoidance of the $300,000 payment is not at issue, however, it is not necessary to decide these issues of fact. Even if ISCO was an accommodation maker and had no ownership or property interest in the loan proceeds, it nevertheless received value for incurring liability on the $300,000 debt, as discussed below.

To prevail on his constructive fraud avoidance claims, the Trustee must prove that ISCO incurred the obligations and made the payments without receiving reasonably equivalent value in exchange and that ISCO was insolvent or rendered insolvent as a result. As a defendant moving for summary judgment, MCB must show that the Trustee has failed to present evidence

---

[2] No deposition transcript of Lee or Rebecca or any other officer or employee of ISCO is part of the record. How the August 16, 2013 transaction was accounted for in ISCO's books is not part of the record.

sufficient to create a genuine issue for trial as to at least one of the elements of the Trustee's claim. For purposes of this motion, the only element at issue is whether ISCO received reasonably equivalent value in exchange for incurring the obligations and for making the loan payments. ISCO's insolvency, while disputed by MCB, was not put at issue in its motion. The constructive fraud analysis is substantively identical under §548 of the Bankruptcy Code and the Uniform Fraudulent Transfer Act. For the Trustee's avoidance claims to survive this motion for summary judgment, it must be determined that the record contains evidence sufficient to support a finding that ISCO did not receive any value as the *quid pro quo* for incurring the obligations and making the payments or that the value received was less than reasonably equivalent to the liability incurred and the payments made.

To determine what value, if any, accrued to ISCO's benefit, the starting point is the judgment entered by the Peoria County Circuit Court in favor of CEFCU and against ISCO and Rebecca on January 11, 2013 in the amount of $261,800. The Trustee argues that ISCO received no benefit when it incurred this obligation as the judgment was the result of misconduct by the Hofmanns and not the result of a prior liability ISCO owed to CEFCU. He suggests that, under these circumstances, ISCO was not "legitimately" indebted to CEFCU. Notwithstanding his verbal attack on the validity of the judgment in response to MCB's motion for summary judgment, the Trustee has not brought a cause of action seeking to avoid the judgment as a fraudulently incurred obligation. Thus, there is no basis for inquiring into what value, if any, ISCO received in exchange for incurring liability to CEFCU on the judgment. Without avoidance of the judgment under bankruptcy law, the judgment must be accorded full faith and credit in federal court proceedings under 28 U.S.C. §1738.

Neither an appeal nor an appellant's posting of a bond or other security to obtain a stay of enforcement of a judgment affects the validity of the judgment. *Big Muddy Coal & Iron Co. v Industrial Commission,* 289 Ill. 515, 518 (1919); *Williamsburg Village Owners' Assoc., Inc. v. Lauder Associates,* 200 Ill.App.3d 474, 481-82 (1 Dist. 1990); *Western United Dairy Co. v. Miller,* 40 Ill.App.2d 403, 412 (1 Dist. 1963). The CEFCU judgment against ISCO and Rebecca was valid under Illinois law and remained so notwithstanding the fact that ISCO and Rebecca filed a notice of appeal and ISCO deposited with the circuit clerk a certificate of deposit to obtain a stay of enforcement under Illinois Supreme Court Rule 305(a). It follows directly from the validity and eventual satisfaction of the CEFCU judgment against ISCO that, as discussed below,

10

ISCO's obligation to MCB on the $300,000 loan was incurred for value and its subsequent payments on that debt were made for value.

On August 16, 2013, the final payment called for by the settlement with CEFCU was made, funded by the $300,000 loan and paid by a cashier's check in that amount issued by MCB made payable to CEFCU. Where a debtor's liability for a loan is sought to be avoided, an important factor bearing on the issue of reasonably equivalent value is whether the debtor was the recipient of the loan proceeds, often determined by the deposit of the proceeds into the debtor's bank account. See *In re Tanglewood Farms, Inc. of Elizabeth City,* 487 B.R. 705, 711-12 (Bankr. E.D.N.C. 2013) (citing cases). Since the $300,000 in loan proceeds from MCB were not deposited into an account of either co-borrower, it cannot be determined on the present evidentiary record who owned the loan proceeds as between Lee and ISCO. For purposes of MCB's summary judgment motion, it is immaterial whether, as a matter of Illinois law, ISCO acquired a property interest in the loan proceeds so as to make it, as opposed to Lee, the owner and transferor of the funds. The Trustee does not dispute that the loan proceeds were disbursed to CEFCU at the direction of Lee, ISCO's president. If ISCO took ownership of the funds, ISCO received in exchange for its liability on the note to MCB the value of the loan proceeds which became the property of ISCO, which it immediately caused to be transferred to one of its creditors. If it was Lee who took title to the loan proceeds, from ISCO's perspective the loan was nonetheless intended to benefit ISCO as funding a payment to CEFCU to obtain a release of the judgment against ISCO. In other words, even if ISCO's participation in the MCB loan was merely as an accommodation maker or guarantor without obtaining a property interest in the loan proceeds, ISCO received a direct benefit from the loan, which would not have been made without ISCO cosigning the note, that benefit being the satisfaction and release of its judgment debt to CEFCU.

The Trustee argues that the release and satisfaction of CECFCU's judgment against ISCO, entered by the state court because of the garnishment shenanigans carried out by Lee and Rebecca, should not be allowed to serve as the "value" that defeats the avoidance claim. Under the statutory definitions, however, where an obligation incurred by a debtor is not avoided, "value" expressly includes satisfaction of the debt without regard for the circumstances under which it arose. Courts are not to depart from the plain language of a statute by reading in exceptions, limitations or conditions not expressed therein. *In re Robinson,* 811 F.3d 267 (7th

11

Cir. 2016); *Illinois State Treasurer v. Illinois Workers' Comp. Comm'n,* 2015 IL 117418, ¶21. The statutory definitions of value must be applied as written without exceptions.

Similarly, the Trustee asks the Court to view the August 2013 loan, not as a singular transaction, but "wholistically." The Trustee argues that the August 2013 loan was only a small part of a larger transaction in which Lee was using (the Trustee would say "misusing") ISCO to resolve Lee's personal financial troubles that were unrelated to ISCO. In this Court's view, whether ISCO received value when it incurred liability for the August 2013 loan is a narrow inquiry. A debtor company's involvement in a transaction that was part of a larger scheme of its owner does not permit a deviation from the statutorily required analysis into whether the debtor received value for constructive fraud purposes. See *In re Art Unlimited, LLC,* 356 B.R. 700, 707-709 (Bankr. E.D. Wisc. 2006); *First Commercial Mgmt. Grp.,* 279 B.R. at 239.

The Trustee also places significance on the fact that ISCO, despite executing the CEFCU settlement agreement, was not separately named as a payor of the required funds, as Lee was the sole named payor in the agreement. In the Court's view, the designation of Lee and not ISCO as payor is immaterial. The pertinent question is whether ISCO received reasonably equivalent value as the *quid pro quo* for incurring the loan debt. It is undisputed that MCB funded the loan and disbursed the proceeds to CEFCU as directed. It is also undisputed that the release and satisfaction of ISCO's liability on the CEFCU judgment was a direct benefit realized by ISCO in exchange for the payment, fitting squarely within the statutory definition of "value." There is no fact or evidence in the record that contradicts this finding or from which an inference to the contrary could reasonably be drawn. The Trustee's assertion that CEFCU would have released ISCO even if the final $300,000 payment came from a source other than a loan to ISCO is immaterial speculation. It is a matter of undisputed fact that ISCO's liability on the August 2013 note was necessary to obtain the borrowed funds of $300,000 that resulted in a satisfaction and release of CEFCU's judgment against it. Satisfaction of an antecedent debt of a debtor constitutes value as a matter of law under 11 U.S.C. §548(d)(2)(a) and 740 ILCS 160/4(a). See *In re Southeast Waffles, LLC,* 702 F.3d 850, 857 (6th Cir. 2012) (a dollar-for-dollar reduction in debt constitutes, as a matter of law, reasonably equivalent value for purposes of the fraudulent transfer statutes).

Turning to reasonable equivalence, the Court finds no difficulty concluding that the value of the benefit ISCO received was reasonably equivalent to the amount of liability it incurred to

12

MCB. ISCO incurred a $300,000 liability in exchange for a benefit of $300,000 in loan proceeds, an exact equivalence, if it acquired ownership of the proceeds. If Lee was the sole owner of the proceeds, he and not ISCO received the value of those funds upon disbursement by MCB. In that event, since ISCO received the direct benefit of having its judgment debt satisfied in exchange for cosigning the loan, the reasonable equivalence inquiry requires a comparison between the amount of ISCO's liability released by CEFCU and the amount of the loan. The $261,800 judgment had accrued, at the Illinois judgment rate of 9% per annum, almost $12,000 in interest at the time of payment in August 2013 plus an amount of attorney fees in excess of $80,000 according to CEFCU's attorney. The standard of reasonable equivalence does not require an exact equality of value. *Barber v. Golden Seed Co., Inc.,* 129 F.3d 382, 387 (7th Cir. 1997); *In re Pawlak,* 483 B.R. 169, 183 (Bankr. W.D. Wisc. 2012). Reasonable equivalence means "approximately equivalent" or "roughly equivalent." *BFP v. Resolution Trust Corp.,* 511 U.S. 531, 540 n. 4, 114 S.Ct. 1757 (1994). Reasonable equivalence of the value received by ISCO is established as a matter of the undisputed facts in the record.

The effect of the August 2013 loan transaction on ISCO's financial condition was a substitution of a new creditor, MCB, for a prior creditor, CEFCU, with no increase in ISCO's overall liabilities. Since the loan proceeds from the August 2013 Note were used to satisfy ISCO's judgment liability to CEFCU, the Court determines that the August 2013 Note evidences an obligation incurred by ISCO for reasonably equivalent value, and is, therefore, an obligation that is not avoidable on a theory of constructive fraud. See *In re Berkman,* 517 B.R. 288, 302 (Bankr. M.D. Fla. 2014) (under UFTA, satisfaction of judgments against debtor constitutes value as a matter of law); *In re Garcia,* 2014 WL 2757587, *5 (Bankr. D. Kan.) (same under §548); *In re Southmark Corp.,* 138 B.R. 820, 830 (Bankr. N.D. Tex. 1992) (same under §548 and UFTA). There is no evidence in the record, including any reasonable inferences to be drawn, that would support a contrary determination.

The March 2014 Note combined the obligations evidenced by the August 2013 Note signed by ISCO and Lee and the charged off January 2011 note signed only by Lee. Mr. Dittmer's testimony is uncontradicted that the consolidation of the two notes was done at Lee's request to reamortize those debts to provide a single monthly payment. It is undisputed that despite consolidating the two loans into a single note signed by both ISCO and Lee, thereby obtaining the additional liability of ISCO on Lee's 2011 debt, MCB, in accordance with

13

applicable accounting rules, continued to account for the two loans as separate assets on its books and records. ISCO's liability to repay the $300,000 loan was not cancelled by the consolidation but was carried forward on MCB's books as a current loan asset, separate from Lee's charged off loan. The evidence in the record supports MCB's position that since ISCO received reasonably equivalent value for incurring liability on the August 2013 Note, and the March 2014 Note was, in part, a renewal of that same debt, that portion of ISCO's liability on the March 2014 Note is supported by the same original value received by ISCO. MCB is entitled to summary judgment to that extent.

The evidence, however, supports the Trustee's position regarding the additional liability incurred by ISCO when it signed the March 2014 Note attributable to Lee's 2011 debt, incurred without ISCO receiving any new value in exchange. The satisfaction and release of CEFCU's judgment against ISCO was the *quid pro quo* for the $300,000 loan but not for ISCO's assumption of liability for Lee's 2011 debt. It follows that ISCO's liability for the portion of the balance of the March 2014 Note attributable to the 2011 debt of Lee to MCB in the original amount of $800,000, was not in exchange for any value, which MCB appears to concede in its reply brief. Accordingly, MCB is not entitled to summary judgment as to ISCO's assumption of liability for Lee's 2011 debt.

With respect to the avoidability of ISCO's loan payments, the Trustee offers no evidence that contradicts or calls into question Mr. Dittmer's testimony that the debt to which MCB credited the $180,617.65 in payments was the obligation to repay the $300,000 loan made on August 16, 2013. This testimony is corroborated by the Watch List memos. Accordingly, since ISCO's payments were applied to and reduced its own liability to MCB on an unavoidable debt, ISCO received reasonably equivalent value in exchange for those payments. MCB is entitled to summary judgment as to the non-avoidability of those payments.

The Court declines to determine the avoidability of ISCO's $47,741 payment to MCB, referred to in passing in the Trustee's Response and MCB's Reply, or whether the value received by ISCO in exchange for the $300,000 loan was also the *quid pro quo* for the $47,741 payment. That payment is not referred to in the adversary complaint and is not properly at issue for purposes of MCB's motion for summary judgment.

MCB's motion contains an additional request for an order barring admission of an expert witness report disclosed to MCB by the Trustee. In its motion, MCB states that it "expects" the

Trustee to offer the report in response to the motion. In his response, the Trustee declined to offer the report but nonetheless asked for an order determining that the expert's opinion was admissible at trial. The issue is moot for purposes of summary judgment and premature for trial purposes. The Court declines to address or determine any issues relating to the expert, including whether or how his report or testimony may be used in future proceedings.

Count XI, the last Count of the complaint, seeks disallowance of MCB's claim based on §502(d), which mandates disallowance of any claim of a transferee of an avoidable transfer unless repaid. Avoidability of a transfer is a condition precedent to the operation of §502(d). *In re Ameriserve Food Distribution, Inc.,* 315 B.R. 24, 34 (Bankr. D. Del. 2004). As avoidance of ISCO's payments to MCB has now been denied, §502(d) is inapplicable. MCB is entitled to judgment in its favor on Count XI limited to the issue of the avoidability of the payments totaling $180,617.65, which are the only transfers adjudicated in this Opinion. The question of whether any other transfers made by ISCO could yet be put at issue by the Trustee is one this Court refrains from addressing.

Finally, as permitted by Bankruptcy Rule 3007(b), the Trustee has included in the Adversary Complaint an objection to MCB's proof of claim number 93-1 in the amount of $917,373.94 as the balance due on the March 2014 Note. The Objection requests denial of the claim to the extent that ISCO's liability for the March 2014 Note is avoided under a theory of constructive fraud as having been incurred for no value. As indicated in this Opinion, on the factual record made by the parties on MCB's motion for summary judgment, ISCO's liability on the March 2014 Note is partially supported by value, to the extent of the $300,000 loan balance, an amount that the Court is not able to quantify based on the record at this stage. The avoidability of the remaining portion will turn on the issue of ISCO's solvency in March 2014, an issue reserved for future determination. Accordingly, MCB's motion for summary judgment as to the objection to its claim will be granted in part and denied in part.

## CONCLUSION

MCB is entitled to summary judgment on Counts I, II and III as the loan payments totaling $180,617.65 made by ISCO to MCB were made for reasonably equivalent value and are not avoidable.

MCB is entitled to summary judgment on Counts IV, V and VI as to the August 2013 Note based on the Court's determination that the obligation incurred by ISCO on that note was incurred for reasonably equivalent value and is not avoidable.

MCB is entitled to summary judgment on Counts IV, V and VI as to the March 2014 Note only to the extent of the balance due on the August 16, 2013 loan. MCB's motion for summary judgment will be denied on Counts IV, V and VI as to the March 2014 Note to the extent of the balance due on the charged off loan made to Lee in 2011.

With respect to Count VII, this Court's determination that ISCO received reasonably equivalent value for incurring liability for the $300,000 loan and for the payments made on that debt defeats the Trustee's contention that MCB was unjustly enriched by the payments. MCB is entitled to summary judgment on Count VII.

Count IX is brought against MCB for recovery under Section 550 of the Bankruptcy Code the value of the transfers sought to be avoided in Counts I, II and III. MCB should be awarded summary judgment on Count IX since the transfers in question have now been determined to be unavoidable.

Count X alleges a cause of action for damages brought against Mr. and Mrs. Hofmann together for breach of fiduciary duties owed ISCO and its creditors. The litigation on Count X against Rebecca Hofmann will proceed.

MCB is entitled to summary judgment on Count XI, limited to the transfers determined to be unavoidable under Counts I, II and III.

MCB is entitled to summary judgment on the Trustee's objection to MCB's proof of claim number 93-1 to the extent of the amount of the $300,000 loan balance included in the Claim. MCB's motion for summary judgment will be denied as to the amount of the claim attributable to the balance of the January 2011 Note signed only by Lee.

With those rulings by the Court, the remaining issues for trial include: (1) whether the obligation incurred under the March 2014 Note which is attributable to the January 2011 Note signed only by Lee is avoidable, including whether the Debtor was insolvent when the debt was incurred or rendered insolvent thereby; (2) depending on the Court's resolution of the first issue, the determination of the allowable amount of Claim #93-1; and (3) whether Rebecca breached her fiduciary duties as alleged in Count X of the Complaint.

16

This Opinion constitutes this Court's findings of fact and conclusions of law made in accordance with Rule 7052(a)(1) of the Federal Rules of Bankruptcy Procedure. A separate Judgment Order will be entered.

# # #